***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission AFFIRMS the Opinion and Award of Deputy Commissioner Stanback with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Worker's Compensation Act. *Page 2 
2. An employee/employer relationship existed between the named employee and named employer at the times in question.
3. The carrier liable on the risk is correctly named above.
4. The plaintiff's average weekly wage is $424.65 per week for the September 26, 2003 injury. For the February 4, 2008 onset, plaintiff's average weekly wage is to be determined from wage chart.
5. The defendants admit the September 26, 2003 injury arose out of and in the course of employment and is compensable. The defendants deny the February 4, 2008 occupational disease.
6. Exhibits entered into evidence include the following:
 a. Stipulated Exhibit #1 — Pre-Trial Agreement
 b. Stipulated Exhibit #2 — Industrial Commission forms and filings, wage information, job description; Plaintiff's medical records
 c. Stipulated Exhibit #3 — Form 22 and wage documentation
 d. Stipulated Exhibit #4 — Ergonomics report
 e. Defendants Exhibit #1 — Job description
7. Issues for decision are:
(a) Has plaintiff's condition substantially changed since the October 24, 2005 payment of compensation for 13% back rating?
(c) Is the plaintiff's bilateral carpal tunnel syndrome compensable, and determination of all compensation due.
(d) Is plaintiff's request for a job video description inappropriate at this point, as this information should have been requested through the discovery process. *Page 3 
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the beginning of the July 30, 2008 hearing before the Deputy Commissioner, defendants stipulated they accepted as compensable the September 26, 2003 claim in I.C. No. 369771 for plaintiff's right shoulder condition and they approved shoulder surgery by Dr. Peter Hurley. Defendants also stipulated that they accept the plaintiff's depression as compensable.
2. An August 13, 2008 Form 62 has now been filed which restarts temporary total compensation beginning August 8, 2008.
3. At the hearing and per the Pre-Trial Agreement, the plaintiff requested that defendants be ordered to provide a job video of the plaintiff's job. Defendants did not provide a job video, and the Deputy Commissioner did not order defendants to provide a job video.
4. In the September 26, 2003 injury claim in I.C. No. 369771, plaintiff's previous treatment included a March 10, 2004 C5-C6, C6-C7 spine fusion surgery performed by Dr. Ralph Maxy. Pursuant to Opinion and Award filed April 27, 2005 by Deputy Commissioner Adrian Phillips, defendants paid the plaintiff compensation for plaintiff's 13% permanent partial impairment of the back. Defendants later paid additional temporary partial compensation pursuant to an October 9, 2007 Form 62.
5. The plaintiff worked as a "deli lead assistant" for the employer beginning January 2001. Monica Brooker was tendered as an expert witness by defendants in vocational assessments but not as an ergonomics expert. Brooker determined that the deli lead assistant job involves the following tasks each work day: *Page 4 
 a. Two hours of making sandwiches, using slicing machine, etc;
 b. Two hours of bakery related work; and
 c. Three hours of stocking shelves.
6. Brooker further determined the deli lead assistant job, per the Wal-Mart written job description of Essential Functions, requires the following:
 a. "Ability for grasping, reaching overhead and below knee level, bending, twisting or stooping;" and
 b. ". . . (F)requently lift, sort, carry, place merchandise and supplies weighing up to 50 lbs. without assistance." The plaintiff told Brooker the only difference from the written description is that the job duties require lifting and carrying 45 pounds instead of 50 pounds.
7. Brooker also determined the lead deli assistant job requires "frequent, continuous gripping" with the hands.
8. The plaintiff began treatment on February 4, 2008 with Dr. Scott M. McCloskey, a board certified neurosurgeon. Dr. McCloskey's practice is devoted 40% to upper extremity conditions. He performs between 100 and 200 hand operations per year, mostly carpal tunnel syndrome releases.
9. Dr. McCloskey determined the plaintiff had no other repetitive work outside her employment. The plaintiff's exam revealed a positive Tinel's and Phalen's signs over the median nerves of both hands.
10. On February 19, 2008, Dr. McCloskey performed right carpal tunnel release surgery on plaintiff, and on March 12, 2008, he performed left carpal tunnel release surgery on plaintiff. Those surgeries confirmed the diagnosis of carpal tunnel syndrome. The plaintiff's carpal tunnel syndrome condition has improved since these surgeries. *Page 5 
11. Dr. McCloskey opines that the plaintiff's occupation is a substantial causative factor in her bilateral carpal tunnel syndrome. Dr. McCloskey further opines that persons who engage in the type of work plaintiff performed have a higher risk of developing carpal tunnel syndrome than members of the population not similarly exposed. Dr. McCloskey's opinions probative and compelling, establishing by the greater weight of the evidence the causative nexus between plaintiff's employment and her bilateral carpel tunnel syndrome and increased risk in contracting the disease relative to the general population of North Carolina.
12. Defendants referred the plaintiff to Dr. Steven Sanford, a board certified hand surgeon, for an independent medical evaluation on November 2, 2007. Dr. Sanford understood defendants had referred the plaintiff to him to determine any relationship between the plaintiff's September 26, 2003 fall at Wal-Mart and her carpal tunnel syndrome.
13. Dr. Sanford did opine that plaintiff's job had no relationship to her carpal tunnel syndrome because the job did not include highly repetitive forceful pinching and grasping activities and because the job had a variety of activity. Prior to the start of his deposition, Dr. Sanford admitted he was unaware he would be asked whether the plaintiff's job caused the carpal tunnel syndrome. Dr. Sanford had no direct information relative to the amount of repetitive forceful pinching and grasping in the plaintiff's job, and he admitted that the heavy resistance with 50 to 100 pounds of pushing/pulling as shown on the plaintiff's job description could be a risk factor in plaintiff's carpal tunnel syndrome. He suggested that his opinion would be more soundly formulated if he had a chance to discuss her job duties directly with the plaintiff. Further, a job video would help Dr. Sanford, but it was not crucial to his offering an opinion on causation. *Page 6 
14. Defendant's contention that Dr. McCloskey's opinion as to causation is not supported by the greater weight of the evidence because he had not read plaintiff's job analysis report and testified to a leading hypothetical question is not well taken. The hypothetical question propounded fairly represents the facts of the Plaintiff's job duties. The opinion testimony of Dr. McCloskey is given greater weight than that of Dr. Sanford. Dr. McCloskey fully evaluated plaintiff's bilateral carpel tunnel syndrome as an occupational disease while Dr. Sanford formulated his opinions without plaintiff's complete job description.
15. As a result of her carpal tunnel syndrome and the necessary surgeries, the plaintiff was unable to earn any wages in any employment from February 19, 2008 to June 2, 2008. She was then released to four-hour day shifts.
16. On June 2, 2008, Dr. McCloskey rated the plaintiff with a five percent (5%) permanent partial disability of each hand. Dr. McCloskey advised the plaintiff not to return to repetitive jobs and specifically the deli assistant job.
17. Greater weight is assigned to the opinion of Dr. McCloskey as to the causation of plaintiff's carpal tunnel syndrome. The greater weight of the evidence indicates that plaintiff's carpel tunnel syndrome was caused by her job as deli assistant with Wal-Mart and that job placed her at a greater risk than the general public for developing this disease.
18. Based on the Form 22 stipulated into evidence, plaintiff's average weekly wage relevant to her compensable occupational disease of carpal tunnel syndrome is $422.52, yielding a compensation rate of $281.69.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes as follows: *Page 7 
 CONCLUSIONS OF LAW
1. Based upon the defendants' stipulation of plaintiff's September 26, 2003 claim in I.C. No. 369771 for plaintiff's right shoulder condition and depression, plaintiff's claim is compensable. Defendants shall provide all medical care that as may reasonably be required to effect a cure or give relief, and tend to lessen the period of disability. N.C. Gen. Stat. § 97-25; Denning v. Interstate BrandsCorp., ___ N.C. App. ___, 681 S.E.2d 566 (2009).
2. The plaintiff contracted an occupational disease, namely bilateral carpal tunnel syndrome, which was caused by her employment with Wal-Mart. N.C. Gen. Stat. § 97-53 (13).
3. The cause of the plaintiff's occupational disease is characteristic of and peculiar to the plaintiff's employment. The plaintiff's employment created a greater risk of contracting the occupational disease than members of the general population who are not exposed to that type of employment. N.C. Gen. Stat. § 97-53 (13).
4. As a result of her occupational disease, the plaintiff was unable to earn any wages in any employment from February 19, 2008 to June 2, 2008, and she is entitled to temporary total disability compensation for that period, at a compensation rate of $281.69. N.C. Gen. Stat. § 97-29.
5. As a result of her compensable occupational disease, the plaintiff has a five percent (5%) impairment of each hand.
6. As a result of her compensable occupational disease, plaintiff is entitled to payment of all medical expenses for medical treatment associated with her carpal tunnel syndrome, including but not limited to, her treatment with Dr. McCloskey as may reasonably be required to effect a cure or give relief, and tend to lessen the period of disability. N.C. Gen. Stat. § 97-25. *Page 8 
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. In I.C. No. 369771, defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her right shoulder injury and depression for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or may tend to lessen the plaintiff's period of disability, in accordance with Industrial Commission procedures. Payments shall specifically include treatment by Dr. Peter Hurley.
2. An attorney fee in I.C. No. 369771 for plaintiff's counsel of twenty-five percent (25%) of the temporary total disability benefits paid from August 8, 2009 and continuing. Payment of the accrued attorney fee to the date of this Award is reserved until such time as plaintiff receives a permanent partial disability rating to her right shoulder. Defendant shall deduct every fourth check from plaintiff's prospective temporary total disability payments and pay the same directly to plaintiff's counsel.
3. Subject to an attorney's fee approved herein, defendants shall pay plaintiff temporary total disability compensation at the rate of $281.69 per week, beginning February 19, 2008 through June 2, 2008 in I.C. No 885946. Said compensation shall be paid in one lump sum subject to the attorney fee provided hereinafter.
4. Determination of further compensation under N.C. Gen. Stat. §§ 97-29, 97-30 or 97-31 is reserved for later determination in I.C. No. 885946.
5. An attorney fee in I.C. No. 885946 for plaintiff's counsel of twenty-five percent (25%) of the compensation awarded to plaintiff in Paragraph 2 of this AWARD is approved, and *Page 9 
shall be deducted from the compensation due plaintiff and paid by defendants directly to plaintiff's counsel.
6. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury/disease in I.C. No. 885946, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or may tend to lessen the plaintiff's period of disability, in accordance with Industrial Commission procedures. This shall specifically also include the treatment with Dr. McCloskey.
7. Defendants shall pay the costs due to the Commission.
This the __ day of November 2009.
S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/_____________ DIANNE C. SELLERS COMMISSIONER
 S/_______________ STACI T. MEYER COMMISSIONER *Page 1